[Cite as *State v. Richmond*, 2017-Ohio-2656.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104713**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEMETRIUS E. RICHMOND

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; REVERSED AND
REMANDED IN PART

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-598288-A

**BEFORE:** Jones, J., Blackmon, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** May 4, 2017

**ATTORNEY FOR APPELLANT**

Paul A. Mancino, Jr.
Mancino, Mancino & Mancino
75 Public Square Building, Suite 1016
Cleveland, Ohio 44113-2098


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Edward R. Fadel
        Mary McGrath
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

**{¶1}** Defendant-appellant Demetrius Richmond appeals his conviction and sentence handed down after he pleaded guilty to two counts of rape. We affirm his conviction but reverse and remand his case for the limited purpose of addressing the findings required for the court to impose consecutive sentences, for the trial court to compute the correct days of jail-time credit, and to issue a nunc pro tunc sentencing entry showing Richmond's jail-time credit.

**{¶2}** In 2015, Richmond was charged with three counts of rape, one count of attempted rape, two counts of aggravated burglary, and two counts of kidnapping in two incidents involving two separate victims, D.R. and E.L. Two of the rape counts, the attempted rape, one count of aggravated burglary, and one count of kidnapping also alleged three-year firearm specifications. The incident with E.L. occurred on September 3, 1995. The incident with D.R. occurred on July 6, 1996.

**{¶3}** During the pretrial process, Richmond moved to fire his court-appointed counsel. On March 3, 2016, the state proposed a plea and the trial court addressed Richmond's motion on the record. Richmond told the court that there was a lack of communication with counsel and he kept asking for discovery but had not received it from his attorney. The court noted that Richmond had in fact just received discovery and informed Richmond that his counsel had pretried the case with the state and filed motions on his behalf. Defense counsel told the court that there were complications with the case because it was considered a "cold case," there were numerous discovery

documents marked "counsel only" due to nature of the cases, and there had been delays because counsel sought independent DNA testing. Counsel also explained that he had met at least four times with his client during the pendency of the case and had just secured a plea offer from the state.

{¶4} The trial court denied Richmond's motion.

{¶5} On the day the case was set for trial, June 8, 2016, Richmond again told the court he wanted a new attorney. He told the court his attorney had lied to him "three times," told him certain laws did not exist, and was deceitful and dishonest. The court told Richmond that he was represented by a skilled and experienced attorney who had a thorough knowledge of the law and that Richmond should be careful not to listen to "jailhouse lawyers." The court also explained to Richmond that he had an obligation to work with his attorney and did not get to choose his appointed lawyer. The court again went over the many times counsel had been to the court to pre-try the case with the state.

{¶6} Richmond's counsel repeated the steps he had taken to advocate for his client and told the court it was difficult to speak with his client in jail because his client kept "hanging up on him."

{¶7} The court ruled that Richmond failed to demonstrate that his attorney should be removed from the case.

{¶8} Richmond entered into a plea agreement with the state. When asked by the court during the plea colloquy if he was satisfied with the representation of his attorney, Richmond answered in the affirmative. Richmond pleaded guilty to two counts of rape

and the court proceeded to sentencing. The court sentenced him to two concurrent terms of six years in prison to be served consecutive to the 28-year sentence he was serving in another case. The court classified Richmond as a sexual predator.

{¶9} Richmond appealed and raises the following assignments of error for our review:

> I. Defendant was denied due process of law when the court did not conduct a full and fair hearing concerning his motion to disqualify court-appointed counsel.
>
> II. Defendant was denied due process of law when the court did not correctly inform defendant concerning applicable penalties.
>
> III. Defendant was denied due process of law when the court imposed a consecutive sentence without making any findings nor having a presentence investigation report.
>
> IV. Defendant was denied due process of law when the court failed to include in its sentencing entry any jail credit.
>
> V. Defendant was denied due process of law when the court failed to rule on defendant's motion to dismiss.

## Motion to Disqualify Counsel

{¶10} Generally, when a defendant moves to disqualify his or her court-appointed counsel, it is the trial court's duty to inquire into the complaint and make it a part of the record. *State v. Corbin*, 8th Dist. Cuyahoga No. 96484, 2011-Ohio-6628, ¶ 19, citing *State v. Lozada*, 8th Dist. Cuyahoga No. 94902, 2011-Ohio-823. The inquiry, however, need only be brief and minimal. *State v. King*, 104 Ohio App.3d 434, 437, 662 N.E.2d 389 (4th Dist.1995).

**{¶11}** The defendant bears the burden of demonstrating proper grounds for the appointment of new counsel. *State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, ¶ 18. "If a defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record." *Id.*, citing *State v. Deal*, 17 Ohio St.2d 17, 20, 244 N.E.2d 742 (1969). The grounds for disqualification must be specific, not "vague or general." *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 68.

**{¶12}** Additionally, in order for the court to discharge a court-appointed attorney, the defendant must show "'a breakdown in the attorney-client relationship of such magnitude as to jeopardize a defendant's right to effective assistance of counsel.'" *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988), quoting *People v. Robles*, 2 Cal.3d 205, 215, 466 P.2d 710 (1970). Similar to what the trial court told Richmond in this case, a defendant's right to counsel "'does not extend to counsel of the defendant's choice.'" *Patterson* at ¶ 20, quoting *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93, 209 N.E.2d 204 (1965).

**{¶13}** We review a trial court's decision whether to remove court-appointed counsel for an abuse of discretion. *Patterson* at ¶ 19. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶14}** We find no abuse of discretion in this case. The trial court conducted two extensive hearings into Richmond's accusations. Richmond's complaints appear to have

stemmed from his belief that his attorney had withheld discovery from him and lied to him about the law. The court considered Richmond's concerns and explained to Richmond the nature of discovery and the pretrial process and assured Richmond that he was being represented by a competent and experienced attorney. Counsel explained to the court that, due to the cases being sexual assault cases, much of discovery was marked "for counsel only," so he was not allowed to share some file documents with his client. During both hearings, defense counsel informed the court about the pretrials he had had with the state, the status of the independent DNA testing, witness interviews, and discovery. Counsel also explained to the court that he had met with Richmond in jail on many occasions, but faced difficulty because Richmond often hung up on him (counsel and Richmond would talk face-to-face via phones). Counsel did not, however, indicate that his communication issues with Richmond inhibited him from preparing for trial. "[A] lack of rapport is not sufficient to constitute a total breakdown when it does not inhibit the attorney from both preparing and presenting a competent defense." *State v. Brown*, 8th Dist. Cuyahoga No. 103835, 2016-Ohio-5415, ¶ 16-17, citing *State v. Davis*, 8th Dist. Cuyahoga No. 101208, 2014-Ohio-5144, ¶ 13.

{¶15} In light of the above, we find that the trial court did not abuse its discretion in denying Richmond's pro se motion to disqualify counsel. The first assignment of error is overruled.

**Maximum Penalty**

{¶16} In the second assignment of error, Richmond claims he was denied due

process because the trial court misstated the maximum penalties he could receive at sentencing. At his June 8, 2016 plea hearing, the trial court misspoke and told Richmond that he was facing a possible sentence of three to 11 years for each first-degree felony. In fact, Richmond was facing a possible sentence of three to 11 years for the 1995 rape and a possible sentence of three to ten years for the July 6, 1996 rape. *See generally State v. Thomas*, 148 Ohio St.3d 248, 2016-Ohio-5567, 70 N.E.3d 496 (court held that defendant, who committed a first-degree felony in 1993 and was sentenced in 2014, should have been sentenced under H.B. 86). Thus, the trial court misstated the possible maximum penalty as to one of the rape counts. The issue is whether that misstatement, when Richmond was ultimately sentenced to six years concurrent to the other rape count, denied him due process. We find that it did not.

{¶17} As an initial matter, we note that Richmond did not object to the trial court's pronouncement of the maximum possible sentence at his plea hearing; thus, he has waived all but plain error. *State v. Caplinger*, 105 Ohio App.3d 567, 571, 664 N.E.2d 959 (4th Dist.1995). "The plain error doctrine permits correction of judicial proceedings when error is clearly apparent on the face of the record and is prejudicial to the appellant." *Id.*

{¶18} The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). "The standard for reviewing whether the trial court accepted a plea in compliance

with Crim.R. 11(C) is a de novo standard of review." *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). "It requires an appellate court to review the totality of the circumstances and determine whether the plea hearing was in compliance with Crim.R. 11(C)." *Id.* Crim.R. 11(C)(2)(a), which outlines the requirements for a plea, provides that a court "shall not accept a plea of guilty" without first determining that "the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved * * * ."

{¶19} Ohio courts have determined that although literal compliance with Crim.R. 11(C)(2)(a) is preferred, it is not an absolute requirement. *Caplinger* at 572. Rather, the trial court's actions will be reviewed for "substantial compliance" with Crim.R. 11(C)(2)(a). *Id.*, citing *State v. Johnson*, 40 Ohio St.3d 130, 133, 532 N.E.2d 1295 (1988).

> Substantial compliance means that under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving. In other words, if it appears from the record that the defendant appreciated the effect of his plea and his waiver of rights in spite of the trial court's error, there is still substantial compliance. Furthermore, an appellant who challenges his plea on the basis that it was not knowingly and voluntarily made must show a prejudicial effect. The test is whether the plea would have otherwise been made.

(Citations omitted.) *Caplinger* at *id.* Thus, Richmond must show prejudice — he must show that his plea would not have otherwise been made — before his plea will be vacated for a trial court's error involving nonconstitutional Crim.R. 11(C) violation. *See State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462.

{¶20} In *Caplinger*, the trial court misstated the maximum sentence to the appellant by five years; the court told the appellant the maximum sentence was five years when the maximum sentence for the crime he had pleaded guilty to was in fact ten years in prison. The court then sentenced the appellant to an indefinite term of five to ten years in prison. The Fourth District found that the trial court's misstatement could have affected the appellant's decision to plead guilty and concluded that the trial court failed to substantially comply with Crim.R.11(C)(2)(a). *Caplinger*, 105 Ohio App.3d 567 at 573, 664 N.E.2d 959.

{¶21} In *State v. Davis*, 8th Dist. Cuyahoga No. 101338, 2015-Ohio-178, the trial court erroneously informed the defendant that the maximum penalty he could receive for his fourth-degree felonies was up to 12 months, whereas the maximum penalty was 18 months. The trial court sentenced the defendant to 12 months in prison. On appeal, the defendant argued that he did not enter his guilty pleas knowingly, intelligently, and voluntarily because the trial court misinformed him of the maximum possible prison term he could receive at sentencing. *Id.* at ¶ 5. This court disagreed, finding that the defendant failed to show he had been prejudiced because the court sentenced him to a total of 12 months in prison: "It is not as if the court informed him he could receive up

to 12 months and then sentenced him to 18 months. If that were the case, the prejudice would be manifest." *Id.* at ¶ 10.

{¶22} Similar to *Davis*, in this case, although the trial court misstated the maximum penalty by one year, the trial court sentenced Richmond to a total of ten years in prison. If the trial court had sentenced Richmond to 11 years in prison without informing him of the possibility of that sentence, then the prejudice, as in *Caplinger*, would be obvious and "manifest." Richmond has failed to show how misinforming him that the statutorily prescribed maximum prison term was 11 years, instead of ten years, on one rape conviction, when the court sentenced him to only six years in prison, would have changed his decision to enter a guilty plea.

{¶23} Therefore, the second assignment of error is overruled.

**Court Erred in Imposing Consecutive Sentences**

{¶24} In the third assignment of error, Richmond argues that the trial court erred when it ordered the sentence in this case to be served consecutive to the sentence he is serving in another case without making the requisite statutory findings. He also argues that the court should have ordered a presentence report. The state concedes that the trial court did not make the required findings to impose consecutive sentences.

{¶25} R.C. 2929.41(A) provides that all sentences of imprisonment are presumptively concurrent. It states:

Except as provided in division (B) of this section, division (C) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised Code, a

prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States. * * *.

**{¶26}** Pursuant to R.C. 2929.41(A), therefore, the trial court has the duty to make the statutory findings when imposing consecutive sentences, even when one of the terms had already been imposed in a separate proceeding in an unrelated case. Here, the trial court failed to make the findings required by the statute before imposing consecutive sentences.

**{¶27}** Therefore, we reverse the trial court's imposition of consecutive terms of imprisonment and remand the case to the trial court to consider whether consecutive sentences are appropriate and, if so, to enter the proper findings on the record. *See State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, and *State v. LaSalla*, 8th Dist. Cuyahoga No. 99424, 2013-Ohio-4596 (this court found that trial court failed to make requisite statutory findings before imposing sentence consecutive to a sentence already imposed).

**{¶28}** As for Richmond's argument that the trial court should have ordered a presentence investigation report, we note that the trial court informed the parties that it planned to proceed straight to sentencing after Richmond pleaded guilty and Richmond did not object; therefore, he has waived all but plain error. We find no plain error in the trial court's decision not to order a presentence investigation report, especially given that

Richmond was facing mandatory prison time in the instant case and was currently in prison on another case in which he had been sentenced to 28 years in prison and classified as a Tier III sex offender. Richmond's attorney could have clearly decided that a presentence investigation report would not have been beneficial to his client.

{¶29} The third assignment of error is sustained in part and overruled in part.

**Jail-Time Credit**

{¶30} In the fourth assignment of error, Richmond argues that the trial court did not give him credit for the time he had already spent in jail.

{¶31} Under R.C. 2929.19(B)(2)(g)(i), if the trial court determines at the sentencing hearing that a prison term is necessary or required, it is the duty of the trial court, at the time of sentencing, to

> [d]etermine, notify the offender of, and include in the sentencing entry the number of days that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the stated prison term under section 2967.191 of the Revised Code. * * *

R.C. 2929.19(B)(2)(g)(iii) further provides, in relevant part:

> The sentencing court retains continuing jurisdiction to correct any error not previously raised at sentencing in making a determination under [R.C. 2929.19(B)(2)(g)(i)]. The offender may, at any time after sentencing, file a motion in the sentencing court to correct any error made in making a determination under [R.C. 2929.19(B)(2)(g)(i)], and the court may in its discretion grant or deny that motion. If the court changes the number of days in its determination or redetermination, the court shall cause the entry granting that change to be delivered to the department of rehabilitation and

correction without delay. * * *

{¶32} The transcript shows that counsel motioned for jail-time credit and the trial court granted the motion; counsel and the court discussed the matter at length trying to determine which case to apply the credit to. However, the trial court failed to place any computation of the jail-time credit in its sentencing entry.

{¶33} Thus, the case is remanded for the trial court to compute the correct days of jail-time credit and to issue a nunc pro tunc sentencing entry showing Richmond's jail-time credit.

{¶34} The fourth assignment of error is sustained.

**Motion to Dismiss — Preindictment Delay**

{¶35} In the fifth assignment of error, Richmond argues that he was denied due process because the trial court failed to rule on his motion to dismiss. We disagree. Motions not ruled on when a trial court enters final judgment are considered denied. *State v. Duncan*, 8th Dist. Cuyahoga No. 97208, 2012-Ohio-3683, ¶ 4. Therefore, the trial court in fact denied Richmond's motion to dismiss.

{¶36} Richmond claims that he was subject to an unjustified preindictment delay. The Ohio Supreme Court recently reaffirmed that preindictment delay violates due process only when it is unjustifiable and causes actual prejudice. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12. The burden is on the defendant to present evidence of actual prejudice; once a defendant does so, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Id.* at ¶ 13, citing *State v.*

*Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998).

**{¶37}** In his motion to dismiss, Richmond argued that he suffered actual prejudice because there was unavailable evidence; the state could not question witnesses or examine crime scenes as they were in 1995 and 1996; and important witnesses were unavailable, unidentifiable, or unable to recall events. In *Jones* at ¶ 20-21, the Ohio Supreme Court explained:

> A determination of actual prejudice involves "'a delicate judgment'" and a case-by-case consideration of the particular circumstances. A court must "consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." This court has suggested that speculative prejudice does not satisfy the defendant's burden. The "possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice." Those are "the real possibilit[ies] of prejudice inherent in any extended delay," and statutes of limitations sufficiently protect against them. That does not mean, however, that demonstrably faded memories and actually unavailable witnesses or lost evidence cannot satisfy the actual-prejudice requirement.

(Citations omitted.)

**{¶38}** In this case, Richmond's claim of prejudice is speculative at best. He has failed to identify what evidence or which witnesses are missing or unavailable with any specificity. Just the possibility of faded memories, inaccessible witnesses, and lost evidence is insufficient to demonstrate actual prejudice. *Jones* at ¶ 27.

**{¶39}** Richmond argues that the state had no justification for its delay in prosecuting him, especially when the state knew he was the alleged assailant in the case where D.R., a former girlfriend, was the named victim. While that may very well be the case, we do not reach this argument because Richmond has not first met his burden by

showing actual prejudice.   Thus, the burden did not shift to the state to justify its delay in prosecuting Richmond.

**{¶40}** In light of the above, the fifth assignment of error is overruled.

**{¶41}** Conviction affirmed; but we reverse the trial court's imposition of consecutive terms of imprisonment and remand the case to the trial court (1) to consider whether consecutive sentences are appropriate and, if so, to enter the proper findings on the record and (2) for the trial court to compute the correct days of jail-time credit and to issue a nunc pro tunc sentencing entry showing Richmond's jail-time credit.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

PATRICIA ANN BLACKMON, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR