[Cite as *State v. McGee*, 2022-Ohio-2045.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                       Nos. 110980 and 110981

        v.                             :

DEVIN MCGEE,                            :

    Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 16, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-21-657445-A and CR-21-657539-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin M. Karkutt, Assistant Prosecuting Attorney, *for appellee.*

Patituce & Associates, LLC, Joseph C. Patituce, Megan M. Patituce, and Chloe A. Greenawalt, *for appellant.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Defendant-appellant Devin McGee appeals his convictions after entering guilty pleas in two criminal cases. We affirm McGee's convictions because we find that the trial court did not abuse its discretion denying McGee's motions to

discharge counsel and withdraw plea. Further, we find that the trial court properly imposed consecutive sentences and McGee has not shown that his counsel was ineffective.

## I. PROCEDURAL HISTORY AND STATEMENT OF FACTS

{¶ 2} In 2021, McGee was indicted in two separate criminal cases. On March 4, 2021, in Cuyahoga C.P. No. 657539, McGee was indicted for two counts of rape in violation of R.C. 2907.02(A)(2), one count of kidnapping in violation of R.C. 2905.01(A)(4) with a sexual motivation specification pursuant to R.C. 2941.147(A), one count of felonious assault in violation of R.C. 2903.11(A)(1), and one count of aggravated menacing in violation of R.C. 2903.21(A).

{¶ 3} On March 5, 2021, in Cuyahoga C.P. No. 657445, McGee was indicted with one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), and one count of falsification in violation of R.C. 2921.13(A)(3). These counts included forfeiture specifications pursuant to R.C. 2941.1417(A).

{¶ 4} On March 23, 2021, McGee's appointed counsel in both cases filed a motion to withdraw from representation, citing a conflict of interest. On March 24, 2021, the trial court granted the motion to withdraw and appointed new counsel to represent McGee.

{¶ 5} On September 15, 2021, McGee entered into a plea agreement with the state. In Cuyahoga C.P. No. 657539, McGee entered pleas of guilty to two counts of sexual battery in violation of R.C. 2907.03(A)(1), one count of abduction in

violation of R.C. 2905.02(A)(1), and one count of attempted felonious assault in violation of R.C. 2923.02 and 2903.11(A)(1). The remaining charge and specifications were nolle prosequi. In Cuyahoga C.P. No. 657445, McGee entered a plea of guilty to improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B) and agreed to forfeit the firearm listed in the indictment. The remaining charges were nolle prosequi.

{¶ 6} When conducting the plea colloquy with McGee, the trial court informed him of the maximum penalties he faced for each count and also informed him that by pleading guilty he could be subject to a total term of incarceration of 16 years in Cuyahoga C.P. No. 657539 and a term of incarceration of up to 18 months in Cuyahoga C.P. No. 657445. McGee indicated to the trial court that he understood that the trial court made no promise of any particular sentence in order to induce him to enter the plea agreement and agreed that nobody had threatened or promised him anything to enter into the plea agreement other than what was put on the record. McGee further responded "yes" when asked by the trial court if he was satisfied with his lawyer's representation.

{¶ 7} On October 7, 2021, McGee filed a pro se motion to discharge counsel. Within the motion, McGee stated that his attorney did not "represent him properly." McGee further stated that his attorney did not clearly communicate the plea agreement and potential sentence to him and did not share the evidence the prosecution had against him. McGee told the trial court that these actions by his attorney led him to enter "a blind plea" with no discussion of any specifics regarding

sentencing. McGee said that he was frightened and "weary" of going to trial and that he felt taken advantage of because he had "never been in criminal trouble and [had] a lack of experience regarding the legal process." McGee detailed his interactions with his attorney, telling the court that his attorney asked him the same questions every time he saw him, didn't seem to remember him, rushed video calls, and did not communicate with McGee's family. McGee also felt that his attorney showed no "fight" in defending him.

{¶ 8} On October 18, 2021, the trial court held a hearing on McGee's motion to discharge counsel. McGee addressed the trial court and stated that he was not comfortable with his lawyer or the plea, that he felt his lawyer was not fighting for him, and that his family had "a lawyer in place right now." McGee indicated the new lawyer had not been hired yet, that he was not going to "throw his life away," and that he had "never been in trouble for nothing." The trial court noted on the record that McGee had juvenile offenses of violence, as well as convictions for driving under the influence and drug abuse as an adult and had several misdemeanor offenses that were pending in Cleveland Municipal Court.

{¶ 9} McGee told the trial court that he wanted his attorney to withdraw his plea. When the trial court asked McGee why he wanted to withdraw his plea, McGee indicated that he wasn't comfortable with counsel and that counsel was not working for him and incorporated his written motion to discharge counsel. The trial court denied the motion to discharge counsel and the oral motion to withdraw plea and proceeded to sentencing.

**{¶ 10}** Before hearing from the parties in regard to sentencing, the trial court informed McGee of his duties to register as a sex offender. The assistant prosecuting attorney reminded the court that the parties agreed the offenses were not allied offenses of similar import at the time of the plea. The trial court then asked McGee's counsel if he reviewed the presentence investigation report and found it to be accurate. Counsel replied that he did. The trial court recited the summary of the victim, C.J.'s account of the offenses from the presentence investigation report as follows:

> The victim stated that she was supposed to hang out with a friend of hers that she refers to as Boo, B-o-o. * * *
>
> She stated that Boo and another male picked her up and the other male was driving. The victim described the guys had a bottle of liquor and wanted her to drink some. She stated that when they arrived at the west side the guys made her roll marijuana to smoke. She stated that Boo and his brother went to a room together and came back out a short time later and they smoked the marijuana.
>
> The victim stated that Boo began to force her to drink the liquor that was left in the bottle. She started saying that she wanted to go home. She stated that she was in the living room when Boo began to try to take her clothes off. She stated that Boo grabbed her purse and threw it across the room and dumped it on the floor. She stated that Boo said to his brother, Whoa, she don't act right. Go get the cords. End quote. All she wanted to do is drink and smoke and nothing else.
>
> She ran — she stated that she ran to try to grab the phone, but the brother grabbed her and pulled her by the hair and started dragging her towards the kitchen. In the kitchen, Boo began to strangle her with his hands around her neck. She told him that she could not breathe so they grabbed her inhaler and gave it to her. She continued to tell them that she wanted to go home.
>
> Boo then grabbed her phone and broke the screen on the front door handle — front room door handle. She stated that he then

grabbed two chains that were around his neck and broke them off. She ran towards the kitchen to go get a knife but the brother was stopping her and would not let her go.

She described urinating on the floor in the living room and Boo stating, You need to clean it up, and the brother stated, You need to clean this up or something's going to happen to you. She then heard them say, quote, Get the chopper, get the chopper. She thought her life was going to end.

She stated she was screaming for them to let her go and they dragged her to the bedroom. She stated that Boo ran the shower water and made her shower while they stood outside the door. She then stated that they did not give her extra clothes she had in the bathroom and she only had a towel. Boo then ripped the towel she had covering her body and describes that both males at the time began to touch her. Boo put his penis in both [sic] her anus and was also bending her over in the shower part of the bathroom. Boo was on top of her with his knee and not allowed [sic] her to get up.

She stated the brother at the time was looking through the closet for the cords and Boo stated, quote, She don't want to give it to him. He about to take it from you, end quote. She stated that she was not about to lose her life and ran and grabbed a knife. She began to threaten the males with a knife trying to leave the apartment. At this point she finally got her belongings and ran out of the apartment.

While on the phone with the police, [McGee and his brother] pulled up in the brother's vehicle. The victim did describe a light-skinned female in the back seat of the vehicle with the brother and [McGee]. She stated that the brother had put his fingers in both her vagina [sic] and tried to perform oral sex on her while [McGee] held her down but she kicked him to stop it from happening.

{¶ 11} The assistant prosecuting attorney informed the trial court that after McGee was apprehended, McGee denied any sexual activity until he was confronted with the fact that his DNA was in the sexual assault kit from the victim. C.J. addressed the court and told the court that McGee had ruined her life, that she had nightmares for months, and has panic attacks for which she takes more medication

than ever before. She remains scared, does not trust people, and hates McGee for what he did, especially in light of the fact that she thought he was her friend.

{¶ 12} McGee's counsel stated McGee was 30 years old, had lived with his children and mother for three of the past several years, has been a certified carpenter, had a year of college, and was a retail store manager. Counsel also read a letter from McGee's grandmother, which related that McGee had recent tragedy in his life as he lost his grandfather, his sister was killed in a car accident, and his brother-in-law committed suicide. She believed that the incident happened due to abuse of alcohol and marijuana and the crimes were out of character for McGee, who has a sincere belief in God. McGee addressed the court and stated he wished he would have gone to trial and informed the court that the other individual charged pleaded guilty to attempted felonious assault and abduction and was sentenced to community control sanctions.

{¶ 13} The trial court announced that it considered the seriousness and recidivism factors in the case as well as the purposes and principles of the sentencing statutes. The trial court indicated it took into account McGee's behavior in court showing a lack of respect to the victim while she spoke and found it to be indicative of McGee's character. The trial court noted McGee was not truthful when he said that he had not been in trouble before. As to the crimes committed, the trial court found that

> [t]hese cases are rare, and they are always shocking when they occur.
> If there is ever a case that justifies consecutive time, this is it. This is

it. Shame on you, Mr. McGee. You do not deserve to walk amongst the free. You are a physical terrorist for what you did to [C.J.].

{¶ 14} The trial court announced its reasons and findings for imposing consecutive sentences by stating:

I find a 16-year sentence on the sexual battery case is not disproportionate to what occurred. You put your penis in the victim's anus and in her vagina. You were violent with her while doing so. You dragged her around the carpet. You threatened to tie her up with cords. You mentioned about a knife, i.e., the chopper in the presentence investigation. I mean, you know, who does this other than like Idi Amin. You're a monster. So the harm is so great or unusual that a single term does not accurately reflect the seriousness of the conduct. Sixteen years is not disproportionate to the acts committed by you.

{¶ 15} In sentencing McGee, the trial court imposed an aggregate term of imprisonment of 17 years, 6 months. In Cuyahoga C.P. No. 657445, the trial court imposed a prison term of 18 months to be served consecutively to the prison term imposed in Cuyahoga C.P. No. 657539 and ordered the forfeiture of the seized firearm. In Cuyahoga C.P. No. 657539, the trial court imposed an aggregate prison term of 16 years, with 5 years on each count of the two counts of sexual battery, 36 months on the count of abduction, and 36 months on the count of attempted felonious assault to be served consecutively.

## II. LAW AND ARGUMENT

### A. SUMMARY OF ASSIGNMENTS OF ERROR

{¶ 16} McGee raises four assignments of error that, for the sake of clarity, we address out of order. The first assignment of error argues that the trial court erred in denying his motion to discharge counsel. The third assignment of error alleges

that the trial court abused its discretion by denying his motion to withdraw plea, and the second alleges that counsel was ineffective for failing to file motions on his behalf prior to sentencing. Finally, McGee's fourth assignment of error argues that the trial court erred by imposing consecutive sentences.

**B.    THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING McGEE'S MOTION TO DISCHARGE COUNSEL**

{¶ 17} McGee's first assignment of error reads:

The trial court erred by denying appellant's motion to discharge counsel.

{¶ 18} After he entered into the plea agreement and seven days before sentencing, McGee filed a pro se motion to discharge counsel. McGee gave generalized information that he did not feel counsel communicated well with him and that he did not believe counsel fought for him. McGee further indicated that he had never been in trouble and that he was not familiar with the legal process.

{¶ 19} McGee argues that the trial court erred by denying this motion because the motion was timely filed, he had counsel ready to be hired, and he was forced to argue the motion to discharge counsel pro se. He further argues that the lack of communication with counsel was so great, he was denied counsel. The state argues that the motion to discharge counsel was not timely because it was made after the plea agreement had been reached and only one week before sentencing. The state further argues that the reasons for wishing to discharge counsel were nothing

more than general, nonspecific reasons and that the trial court was within its discretion to deny the motion.

{¶ 20} We review a trial court's decision to deny an indigent defendant's request for new counsel or to discharge counsel for an abuse of discretion. *State v. Cowans*, 87 Ohio St.3d 68, 73, 717 N.E.2d 298 (1999). An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 21} A criminal defendant who is appointed counsel needs to show good cause for the court to substitute counsel. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 148, citing *Cowans* at 72. The burden to demonstrate good cause to appoint new counsel rests with the defendant. *Id.*; *State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, ¶ 18; *State v. Ortiz-Santiago*, 2017-Ohio-8878, 100 N.E.3d 1127, ¶ 23 (8th Dist.). In order to necessitate a hearing on the request for new counsel, the reasons stated for wanting the discharge of counsel must be specific, not merely "vague or general." *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 68.

{¶ 22} Where issues of communication are cited as the defendant's reason to discharge counsel, the Ohio Supreme Court found that

> [t]o discharge a court-appointed attorney [on the basis of a failure to communicate,] the defendant must show "a breakdown in the attorney-client relationship of such magnitude as to jeopardize a defendant's right to effective assistance of counsel."

*State v. Coleman,* 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988), quoting *People v. Robles*, 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 466 P.2d 710 (1970). We have found that "'[h]ostility, tension, or personal conflict between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify the withdrawal of appointed counsel.'" *State v. Crew*, 8th Dist. Cuyahoga No. 86943, 2006-Ohio-4102, ¶ 17, quoting *State v. Dykes*, 8th Dist. Cuyahoga No. 86148, 2005-Ohio-6636, ¶ 7.

{¶ 23} The parties in this case direct us to *United States v. Mack*, 258 F.3d 548, 556 (6th Cir.2001), which outlines factors that may be considered to evaluate the propriety of a trial court's decision upon a motion to discharge counsel:

> When reviewing a district court's denial of a motion to withdraw or substitute counsel, we generally must consider: (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice. *See United States v. Williams*, 176 F.3d 301, 314 (6th Cir.1999); *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir.1996).

{¶ 24} After entering his plea and one week prior to sentencing, McGee filed his motion to discharge counsel. McGee's motion to discharge counsel contained reasons for wanting to replace counsel to include McGee's belief that counsel did not communicate well and that he felt counsel was not "fighting" for him. Prior to the sentencing hearing, the trial court reviewed the motion and then provided McGee the opportunity in court to state his reasons and explain why he wanted to discharge

appointed counsel. Given McGee's complaints regarding discovery and lack of communication, his filing of the motion after the plea agreement was entered would militate against considering the motion to discharge counsel as timely filed.

{¶ 25} At the plea hearing, McGee informed the trial court he was satisfied with counsel, which contradicted his written motion and his statements given in court. As to McGee's complaints of entering a "blind" plea, which we interpret to mean his entering a plea without an understanding of the likelihood of any particular sentence, the trial court ensured at the plea hearing that McGee was both aware of the maximum penalties he faced and that the trial court promised no particular sentence. McGee's complaints regarding counsel and the lack of communication were general in nature and the specific gaps in information that McGee complained of are contradicted by the record made at the plea hearing. Further, we note his counsel obtained a plea agreement that significantly reduced the potential sentence that could be imposed if McGee were found guilty of the charges after trial. As such, we cannot find that "the extent of the conflict between the attorney and client * * * was so great that it resulted in a total lack of communication preventing an adequate defense." *Id.*; *see also State v. Davis*, 8th Dist. Cuyahoga No. 101208, 2014-Ohio-5144, ¶ 13 ("Even if appellant did not get along well with counsel, a lack of rapport is not sufficient to constitute a total breakdown when it does not inhibit the attorney from both preparing and presenting a competent defense."). Accordingly, we cannot say that McGee demonstrated that the trial court abused its discretion by denying the motion to

discharge counsel after the plea had been taken and McGee's first assignment of error is overruled.

### C. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING McGEE'S MOTION TO WITHDRAW PLEA AND McGEE DID NOT SUFFER INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 26} McGee's second assignment of error reads:

Trial counsel was ineffective when counsel failed to file appellant's pre-sentence motion to withdraw plea in accordance with appellant's wishes.

{¶ 27} McGee's third assignment of error reads:

The trial court erred in denying appellant's pre-sentence motion to withdraw plea.

{¶ 28} We address the third assignment of error first. Crim.R. 32.1 governs withdrawals of guilty pleas. It provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Regarding a presentence motion to withdraw a guilty plea, while generally such a motion should be freely and liberally granted, the Supreme Court of Ohio has instructed that "[t]he decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992), paragraph two of the syllabus. "A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing in order to determine whether there is a reasonable and legitimate basis for the

withdrawal of the plea." *Id.* at paragraph one of the syllabus; *State v. Resto*, 8th

Dist. Cuyahoga No. 109109, 2020-Ohio-4299, ¶ 10.

{¶ 29} A trial court does not abuse its discretion in overruling a motion to

withdraw a guilty plea:

> (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim. R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.

*State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980), paragraph

three of the syllabus.

{¶ 30} We have recognized additional factors that may be considered in

determining the merits of a motion to withdraw plea, including but not limited to:

> (5) whether the motion was made timely; (6) whether the motion states specific reasons for withdrawal; (7) whether the defendant understood the nature of the charges and the possible penalties; (8) whether the defendant was perhaps not guilty or had a complete defense; and (9) whether the state would suffer prejudice if the defendant is allowed to withdraw the plea.

*State v. Hines*, 8th Dist. Cuyahoga No. 108326, 2020-Ohio-663, ¶ 10, citing *State v.*

*Benson*, 8th Dist. Cuyahoga No. 83178, 2004-Ohio-1677, ¶ 9; *State v. Sellers*, 10th

Dist. Franklin No. 07AP-76, 2007-Ohio-4523, ¶ 34; and *State v. Moore,* 8th Dist.

Cuyahoga No. 98132, 2012-Ohio-5734, ¶ 13.

{¶ 31} Our review of the record reveals that McGee was represented by

competent counsel who negotiated a favorable plea agreement with considerably

better terms than conviction on the indictment.  McGee was afforded a full plea

hearing in which he was informed of, and indicated that he understood the nature of, the charges and possible penalties. Further, McGee expressed satisfaction with counsel. Although made orally, the trial court granted McGee an opportunity to address the court on the reasons for his motion to withdraw his plea. McGee voiced general reasons for wanting to withdraw his plea and made no claims of innocence or asserted any potential defenses to the charges in the indictment. Based upon the totality of the circumstances, we cannot say the trial court abused its discretion by denying the motion to withdraw the plea and we overrule the third assignment of error is overruled.

{¶ 32} In his second assignment of error, McGee argues that he suffered ineffective assistance of counsel where counsel did not file a motion to withdraw plea. To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance both fell below an objective standard of reasonable representation and he was prejudiced by counsel's deficient performance. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. The failure to prove either prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721

N.E.2d 52 (2000), citing *Strickland* at 697. Because we find that the trial court did not abuse its discretion in denying the motion to withdraw plea, McGee has not demonstrated that had he filed a written motion to withdraw plea, there is a reasonable probability that the trial court would have granted the motion. Accordingly, the second assignment of error is overruled.

**D. THE TRIAL COURT MADE THE NECESSARY FINDINGS TO IMPOSE CONSECUTIVE SENTENCES AND THOSE FINDINGS WERE NOT CONTRADICTED BY THE RECORD**

{¶ 33} McGee's fourth assignment of error reads:

The trial court erred by sentencing appellant to a consecutive sentence.

{¶ 34} When imposing consecutive sentences, the trial court must make findings as mandated by R.C. 2929.14(C)(4) and incorporate those findings in the sentencing entry. *State v. Hudson*, 8th Dist. Cuyahoga Nos. 108841 and 109011, 2020-Ohio-3972, ¶ 9, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. Pursuant to R.C. 2929.14(C)(4), before the court may impose consecutive sentences, it must first find that consecutive sentences are 1) necessary to protect the public from future crime or to punish the offender; and 2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Additionally, R.C. 2929.14(C) requires the trial court to find any of the following factors:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction

imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 35} In making these findings, the trial court need not state its reasons for imposing consecutive sentences, nor is it required to give a verbatim recitation of the language of R.C. 2929.14(C). *State v. Read-Bates,* 8th Dist. Cuyahoga Nos. 108848, 108849, 108850 and 108851, 2020-Ohio-3456, ¶ 33.

{¶ 36} We may overturn consecutive sentences only if we clearly and convincingly find that "(1) 'the record does not support the sentencing court's findings under * * * [R.C. 2929.14(C)(4)],' or (2) 'the sentence is otherwise contrary to law.'" *State v. Rapier*, 8th Dist. Cuyahoga No. 108583, 2020-Ohio-1611, ¶ 7, quoting R.C. 2953.08. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Hudson* at ¶ 12, quoting *Bonnell* at ¶ 29.

{¶ 37} In this case, the trial court stated the reasons for imposing consecutive sentences:

[T]hese cases are rare, and they are always shocking when they occur. *If there is ever a case that justifies consecutive time, this is it. This is it. Shame on you, Mr. McGee. You do not deserve to walk amongst the free.* You are a physical terrorist for what you did to [C.J.].

\* \* \*

I find a 16-year *sentence on the sexual battery case is not disproportionate to what occurred.* You put your penis in the victim's anus and in her vagina. You were violent with her while doing so. You dragged her around the carpet. You threatened to tie her up with cords. You mentioned about a knife, i.e., the chopper in the presentence investigation. I mean, you know, who does this other than like Idi Amin. You're a monster. *So the harm is so great or unusual that a single term does not accurately reflect the seriousness of the conduct.* Sixteen years is not disproportionate to the acts committed by you.

(Emphasis added.)

{¶ 38} The trial court's statements that McGee did "not deserve to walk amongst the free" and was "a physical terrorist for what you did to [C.J.]" reflect that the trial court believed consecutive sentences were necessary to punish McGee for his admitted crimes. R.C. 2929.14(C)(4). Further, given the facts and circumstances of McGee's crimes and the impact of the crimes upon the victim, the trial court's finding that "a 16-year sentence on the sexual battery case is not disproportionate to what occurred" is supported by the record. R.C. 2929.14(C). Finally, the trial court considered the victim's report of the facts of the crime and her statements regarding the effect those crimes had upon her and found that "the harm is so great or unusual that a single term does not accurately reflect the seriousness of the conduct." R.C. 2929.14(C)(4)(b).

{¶ 39} Given the nature of the crimes and the trial court's findings, we cannot say that the imposition of consecutive sentences in this case is clearly contrary to law or not supported by the record. McGee's fourth assignment or error is overruled.

## III. CONCLUSION

{¶ 40} McGee was convicted after entering a plea bargain with the state of Ohio. The trial court did not abuse its discretion in denying his motions for discharge of counsel and to withdraw his plea where McGee was general in voicing his dissatisfaction with counsel, he was informed of the maximum penalties he faced, he understood the maximum penalties he faced, and he stated to the trial court during his plea that he was satisfied with counsel's representation. Further, McGee did not suffer ineffective assistance of counsel where counsel did not file a motion to withdraw plea before sentencing and McGee did not show a probability that the outcome would be different. Finally, the trial court stated the consecutive findings on the record and we cannot say that the findings are contrary to law.

{¶ 41} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

CORNELIUS J. O'SULLIVAN, JR., J., and
MARY J. BOYLE, J., CONCUR

KEYWORDS:

Motion to discharge counsel; motion to withdraw plea; abuse of discretion; ineffective assistance of counsel; consecutive sentences; R.C. 2929.14(c)(4).

Appellant was convicted after entering into a plea bargain with the state of Ohio. The trial court did not abuse its discretion in denying his motions for discharge of counsel and to withdraw his plea where appellant was general in voicing his dissatisfaction with counsel, was informed of the maximum penalties he faced, understood the maximum penalties he faced, and stated to the trial court that he was satisfied with counsel's representations. Appellant did not suffer ineffective assistance of counsel where counsel did not file a motion to withdraw plea before sentencing where he did not show a probability that the outcome would be different. Finally, the trial court stated the consecutive findings on the record.